UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT BRIDGEWATER,
CHRISTOPHER WILLIAMS,
GWENDOLYN WILLIAMS, and
KENNETH BRIDGEWATER,

    Plaintiffs,

v.

HILTON HOTELS CORPORATION,
KELVIN HARRIS, ROBERT HARRIS,
OCTAVIOUS MILES, THE CITY OF
DETROIT POLICE DEPARTMENT,
DAVID KIPFMILLER, THE
FARBMAN GROUP, DENNIS
ARCHER, JR., TOM LEWAND, and
MODDIE TUREY,

    Defendants.

Case No. 20-11888
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING THE FARBMAN GROUP'S
MOTION TO DISMISS, DAVID KIPFMILLER'S MOTION TO DISMISS,
AND THE HILTON HOTEL'S MOTION FOR SUMMARY JUDGMENT
[12, 22, 28]**

---

This is Scott Bridgewater's third federal lawsuit against the City of Detroit and others claiming a conspiracy against his family and their business.[1] In this most recent case, Bridgewater initially asserted nine claims against ten defendants. The

---

[1] Bridgewater, also known as Kenneth Scott Bridgewater, has served as a plaintiff in all three cases, while his family members have joined in some but not all. *See Bridgewater v. Harris, et al.*, Case No. 16-14112 (E.D. Mich. Mar. 11, 2020) (filed by Scott Bridgewater, Christopher Williams, Gwendolyn Williams, and Lotus Industries, LLC, the family business); *Bridgewater v. Leland, et al.*, Case No. 18-12225 (E.D. Mich. Dec. 7, 2018) (filed by Scott Bridgewater only).

Court has now dismissed Bridgewater's claims against seven defendants, either because the claims were issue- or claim-precluded by prior litigation or because Bridgewater failed to timely serve them. (ECF No. 36, 39.) The only remaining Defendants are the Hilton Hotels Corporation, David Kipfmiller, and the Farbman Group. The Farbman Group has moved to dismiss for failure to state a claim and requested sanctions (ECF No. 12), Kipfmiller has moved to dismiss and requested sanctions (ECF No. 22), and the Hilton has moved for summary judgment (ECF No. 28). The Court now turns to those motions and will dismiss all of the remaining claims.

## I. Background

As stated, Plaintiffs have filed prior lawsuits alleging that the City of Detroit, its employees, and others have conspired to violate their state and federal rights. *See Bridgewater v. Harris, et al.* (hereinafter "*Bridgewater I*") Case No. 16-14112 (E.D. Mich. Mar. 11, 2020) (final judgment after dispositive motions and a bench trial); *Bridgewater v. Leland, et al.* (hereinafter "*Bridgewater II*") Case No. 18-12225 (E.D. Mich. Dec. 7, 2018) (voluntarily dismissed).[2]

Although courts are typically limited to consider the pleadings on a motion to dismiss, a court may take judicial notice of other court proceedings without converting a motion to dismiss into one for summary judgment. *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan*

---

[2] Because this opinion occasionally requires the Court to cite to the dockets of these prior cases, the Court will designate those citations by their case number.

*Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)). Accordingly, the Court takes judicial notice of its prior Findings of Fact and Conclusions of Law in *Bridgewater I*, No. 16-14112, 2020 WL 813388 (E.D. Mich. Feb. 19, 2020), the Court's denial of leave to file a third amended complaint in *Bridgewater I,* Case No. 16-14112, ECF No. 143, and the Wayne County bindover order that found probable cause for Bridgewater's arrest. *Bridgewater I,* Case No. 16-14112, ECF No. 293-16. The Court does not rely on the substance of these factual findings for purposes of this order, but offers them to provide full context.

The full factual history of this dispute is set out in the Court's Findings of Fact and Conclusions of Law in *Bridgewater I,* 2020 WL 813388, at *1–7. The Court recently provided a summary in an order granting motions to dismiss by the City of Detroit and its former employees. (ECF No. 36, PageID.1497–1500) The Court restates that summary here:

> Plaintiffs Kenneth Scott Bridgewater and his brother Christopher Williams operated the Centre Park Bar in downtown Detroit. The Bar was owned by the family's business, Lotus Industries, LLC. The Bar is located in an area of the City that is part of a redevelopment project through the Detroit Downtown Development Authority. The two brothers submitted a bid for this redevelopment project but their bid was rejected because they submitted their proposal late. Bridgewater and Williams complained in the media that the bid process was a sham and a conspiracy orchestrated by the City, designed to direct the project to businessman Dennis Archer, Jr. According to Bridgewater and Williams, the City and a host of co-conspirators retaliated against them for speaking out about the bid process, beginning with enhanced police presence around the Bar. Around the same time, the nearby Hilton Garden Inn filed a noise complaint against the Bar with the City. Between 2014 and 2018, the Michigan Liquor Control Commission fined Centre Park Bar at least 18 times for violations. [*Bridgewater I,* 2020 WL 813388] at *2. Things escalated from there.

3

Bridgewater, Williams, their mother Gwendolyn Williams, and Lotus Industries filed their first suit against the City in November 2016. Complaint, *Bridgewater I*, Case No. 16-14112, (Nov. 19, 2016). They alleged that the City and others had conspired to prevent them from participating in the redevelopment project. Among their claims for relief, the Bridgewater I plaintiffs sought declaratory judgment that the Defendants had retaliated against them for exercising their First Amendment rights by directing Detroit police officers to harass them and issue frivolous noise citations. *Id.* They also sought a declaratory judgment that Mayor Duggan and Police Chief Craig had denied them equal protection under the Fourteenth Amendment and an injunction to stop the City from transferring ownership of the redevelopment district to Archer and his company, Gotham Capital Partners. *Id.*

While the suit was pending, police visited the Bar in response to noise complaints and concerns about overcrowding in violation of fire ordinances. *See Bridgewater I*, 2020 WL 813388, at *3. Plaintiffs responded by amending their complaint on May 2, 2017, to add a First Amendment retaliation claim. Amended Complaint, *Bridgewater I*, Case No. 16-14112, ECF No. 31, PageID.367. A few months later, on July 23, 2017, Bridgewater was cited by Fire Chief Harris for fire code violations and placed under arrest by Police Sergeant Harris for felony resisting and obstructing, although a supervisor later reduced the charge to interfering with a city employee in the performance of one's duties, a misdemeanor. *Bridgewater I*, 2020 WL 813388, at *4.

Plaintiffs filed a second amended complaint on September 29, 2017, adding Police Sergeant Harris and Fire Chief Harris as Defendants and alleging that they too were involved in the retaliatory scheme. Second Amended Complaint, *Bridgewater I*, Case No. 16-14112, ECF No. 66, PageID.1927.

The parties and issues narrowed over the course of the litigation. The Court granted the Detroit Economic Growth Corporation's motion to dismiss. *Bridgewater I*, No. 16-14112, 2019 WL 2410719 (E.D. Mich. June 7, 2019) (order granting DEGC's motion to dismiss). Lotus Industries filed for bankruptcy, settled with all the defendants, and agreed to dismiss all of its claims. *Bridgewater I*, No. 16-14112, 2019 WL 3289845, at *1 (E.D. Mich. July 22, 2019). The only claim that survived summary judgment was Bridgewater's allegation of First Amendment retaliation against Sergeant Harris and Fire Chief Harris. *Bridgewater I*, No. 16-14112, 2019 WL 3289845 (E.D. Mich. July 22, 2019) (order denying in part and granting in part motion for summary judgment).

4

> The Court held a three-day bench trial in November 2019 and found that Defendants Sergeant Harris and Fire Chief Harris were not liable for First Amendment retaliation against Bridgewater. *See* 2020 WL 813388, at *11. The Court found that the trial record established probable cause for the arrest, defeating the First Amendment claim. *Id.* at *7–8. The Court further found that Bridgewater failed to prove that he was arrested because he filed the lawsuit, *id.* at *10–11, meaning that there was no causal connection between any protected activity and any retaliatory action. The Court entered final judgment in favor of the Defendants in March 2020. *Bridgewater I*, Case No. 16-14112, ECF No. 290, PageID.9138. Plaintiffs did not appeal.

(ECF No. 36, PageID.1497–1499.) The story continues with this case.

> Just four months later, in July 2020, Plaintiffs came back to court. Plaintiffs filed this new lawsuit, naming some of the same defendants and adding some new ones. (*See* ECF No. 1.) Plaintiffs yet again name Police Sergeant Robert Harris, Fire Chief Kelvin Harris, and Dennis Archer, Jr. as defendants. (*Id.* at PageID.6–8.) And Plaintiffs add the following new defendants: the City of Detroit Police Department, Detroit Police Sergeant Octavious Miles, Hilton Hotels Corporation, David Kipfmiller (the general manager of the Hilton Garden Inn down the street from the Bar), the Farbman Group (a real estate investment company), Tom Lewand (a mayoral appointee to the Detroit Development Authority), and Moddie Turrey (a Detroit Development Authority employee). (*Id.* at PageID.7–9.)
>
> . . .
>
> While Plaintiffs' theory in their previous case was that the police presence at the Centre Park Bar was to retaliate against Plaintiffs for criticizing the redevelopment project bidding process, the new complaint alleges that "the incident giving rise to the presence of the Detroit Police Department that night [July 23, 2017, the night that Bridgewater was arrested] was derivative of racial animus towards the perception of a '[B]lack crowd' frequenting the Plaintiffs' bar/restaurant[.]"

(ECF No. 36, PageID.1499–1500.)

This allegation is the basis of Plaintiffs' claims against the Hilton, Kipfmiller, and the Farbman Group—the remaining Defendants. Bridgewater alleges that "racial animus" towards Black guests at the Bar was "perpetuated by" the Hilton and

5

its manager, Kipfmiller. (ECF No. 1, PageID.10–11.) Plaintiffs allege that Kipfmiller and the Hilton "conspired" with the City of Detroit, the Police Department, Archer, and Lewand "to racially target the Plaintiff operators of the Centre Park Bar by inundating them with frivolous noise complaints." (*Id.* at PageID.11.) Bridgewater alleges that Kipfmiller called him, his brother, and his customers "n*ggers" and promised to do "whatever it takes to get you n*ggers from across the street from my business." (*Id.*) Plaintiffs allege that Kipfmiller never made noise complaints about other nearby (yet unidentified) bars that were equally loud. (*Id.* at PageID.12.)

Plaintiffs allege that the misdemeanor charge against Bridgewater arising from the July 23, 2017 arrest was initially dismissed because there was no evidence against him. (*Id.* at PageID.12–13.) But the felony charges against Bridgewater were "reauthorized" a few months later and he was arrested. (*Id.* at PageID.13.) Ultimately, Bridgewater, his brother, and their parents were "evicted" from owning and operating the property, "paving the way for Defendant Archer to secure the property in a conspiracy with the Defendants City of Detroit, Lewand, Turrey and Farbman." (*Id.*)

As noted, the Court has now dismissed Plaintiffs' claims against the City of Detroit and various officers, employees, and appointees because they are barred by claim and issue preclusion. (ECF No. 36) (These were federal claims for false arrest, false imprisonment, and unlawful search and seizure under the Fourth and Fourteenth Amendment (ECF No. 1, PageID.14), and state law claims for false arrest,

6

assault and battery, concert of action, and civil conspiracy (*id.* at PageID.33, 40–42, 46).)

Plaintiffs have four remaining claims based on the above-described allegations. Against Kipfmiller and the Hilton, but not the Farbman Group, Plaintiffs assert a federal claim of malicious prosecution under the Fourth and Fourteenth Amendment. (*Id.* at PageID.22). Against all three remaining Defendants, Plaintiffs assert three state law claims: malicious prosecution under Michigan Compiled Laws § 600.2907 (*id.* at PageID.28), concert of action (*id.* at PageID.42), and civil conspiracy (*id.* at PageID.46).

## II. The Farbman Group and Kipfmiller's Motions to Dismiss

The Court will address the motions to dismiss by Kipfmiller and the Farbman Group together because they address the same claims, raise nearly identical arguments, and the same law applies to both parties. (ECF No. 12, 22.)

In deciding these motions, the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A. Malicious Prosecution

Plaintiffs' federal and state claims for malicious prosecution against the Farbman Group and David Kipfmiller are barred by issue preclusion because the

malicious prosecution claims require a finding that officers lacked probable cause to arrest Bridgewater in July 2017, an issue this Court has already decided and rejected in the previous case.[3]

Under collateral estoppel or issue preclusion, a prior decision on an issue of law necessary to a judgment, made by a court of competent jurisdiction, is conclusive in subsequent cases involving any party to the prior litigation, even if the new case is based on a different cause of action. *Rambacher v. C.I.R.*, 4 F. App'x 221, 223 (6th Cir. 2001) (citing *United States v. Mendoza*, 464 U.S. 154, 158–59 (1984)). Thus, Plaintiffs' contention that collateral estoppel does not apply because they did not assert malicious prosecution claims or because they did not allege race discrimination in the prior litigation is misplaced. And unlike the doctrine of claim preclusion or *res judicata*, issue preclusion does not require "a subsequent action between the same parties or their privies"; issue preclusion applies to "a subsequent suit based on a different cause of action involving a party to the prior litigation." *See Montana v. United States*, 440 U.S. 147, 153, 158 n.3 (1979) (stating the respective tests); *see also id.* at 158 ("[T]his Court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common law limits . . . by abandoning the requirement of mutuality of parties . . . ) (citations omitted).

---

[3] There is also the obvious problem that none of the remaining parties are state actors. Defendants focus on the tests for determining state action in a Section 1983 case, but it appears Plaintiffs are seeking to assert constitutional liability through a separate theory of conspiracy with the state actors who have now been dismissed. In either case, the Court does not reach these issues because the malicious prosecution claims are barred by issue preclusion.
8

So for purposes of deciding the present motions, it does not matter whether the Farbman Group, the Hilton, or Kipfmiller are in privity with any of the original parties.[4] Under the doctrine of "issue preclusion" or collateral estoppel, it is enough that Bridgewater was a party to the prior litigation. The question before the Court is whether *Bridgewater I* decided an issue of fact or law necessary to its judgment that is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984).

Here, the Court made a final decision on the merits that was necessary to its judgment when it found, after a bench trial, that Sergeant Harris had probable cause to arrest Bridgewater for failure to comply with his and Fire Chief Harris' lawful orders to shut down the Bar for overcrowding. *See Bridgewater I*, No. 16-14112, 2020 WL 813388, at *8 (E.D. Mich. Feb. 19, 2020). The Court found two separate grounds to support that conclusion: the "preclusive effect" of the state court's bindover order, which was "equivalent to a finding of probable cause on the felony charge," *see People v. Seewald*, 879 N.W.2d 237, 240 (Mich. 2016); Mich. Comp. Laws § 766.13, and its own independent determination after the bench trial that "the trial record here established probable cause for [Bridgewater's] arrest," *Bridgewater I*, No. 16-14112, 2020 WL 813388, at *8 (E.D. Mich. Feb. 19, 2020). A recent Sixth Circuit decision

---

[4] Although the Farbman Group dedicates most of their briefing to privity, the Court doubts that the claimed agency relationship between Farbman and the DDA is a part of the pleadings that can be considered on a motion to dismiss. But the Court need not address that issue because the claim is barred by issue preclusion.

9

calls the former basis into question, *see Smith v. Walters*, 849 F. App'x 551, 556 (6th Cir. 2021), but the latter remains an appropriate ruling for collateral estoppel.

Plaintiffs' federal and state claims for malicious prosecution require a finding that officers lacked probable cause to arrest Bridgewater. *See King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (lack of probable cause is the second element of a federal malicious prosecution claim); *Hardesty v. City of Ecorse*, 623 F. Supp. 2d 855, 862 (E.D. Mich. 2009) (to establish a federal claims for malicious prosecution, a plaintiff must show the absence of probable cause); *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (state law malicious prosecution claims required lack of probable cause).

Bridgewater cannot relitigate whether the officers had probable cause to arrest him by filing a new suit and naming new defendants. "Once an issue is raised and decided, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Rambacher*, 4 F. App'x at 223 (citing *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). Bridgewater chose not to appeal the probable cause finding.[5] So Plaintiffs' malicious prosecution claims against Farbman Group and Kipfmiller (and the Hilton) are barred by issue preclusion.

---

[5] A decision is final for purposes of collateral estoppel when final judgment is entered in that case. *Brown v. Fla. Coastal Partners*, No. 2:13-CV-1225, 2015 WL 4205157, at *9 (S.D. Ohio July 10, 2015) (noting that *"res judicata* and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending") (citations omitted).

10

### B. State Law Claims

The Court has now dismissed all of the federal claims. And there is no diversity jurisdiction. But by statute, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court's discretion whether to exercise supplemental jurisdiction extends to remaining state law claims even after all federal claims have been dismissed. 28 U.S.C. § 1367(c)(4); *see also Adamo Demolition Co. v. Int'l Union of Operating Engineers Loc. 150, AFL-CIO*, No. 20-1163, -- F.4th --, 2021 WL 2764593, at *5 (6th Cir. July 2, 2021) (citation omitted). "[T]he decision depends on "judicial economy, convenience, fairness, and comity." *Inverness Holdings, Ltd. v. Schaafsma*, 501 F. Supp. 2d 1027, 1033 (W.D. Mich. 2007) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

Here there is little question that judicial economy, convenience, and fairness are best served by retaining jurisdiction over the state law claims. All of the relevant facts, law, and procedural history are well known to this Court, and the state law claims can be resolved through the most basic principles of Michigan tort law.

### 1. Civil Conspiracy

In addition to the woefully deficient allegations regarding the existence of a single plan or general conspiratorial objective shared in by the Defendants, Plaintiffs have failed to state a claim for civil conspiracy against the Farbman Group, Kipfmiller, or the Hilton because Plaintiffs have not alleged any viable underlying

11

tort. To establish civil conspiracy in Michigan, "the plaintiff must establish some underlying tortious conduct." *Urbain v. Beetling*, 835 N.W.2d 455, 464 (Mich. Ct. App. 2013). Plaintiffs have not alleged any potential underlying tort other than malicious prosecution. This Court's prior finding that the Detroit police officers had probable cause to arrest Bridgewater precludes that claim.

### 2. Concert of Action

Either the same law applies to concert of action, or there is no such claim anymore under Michigan law. *See Mueller v. Brannigan Brothers Restaurants and Taverns*, LLC, 323 Mich. App. 566, 584 (2018) ("Irrespective of whether any case to date has explicitly so held, we do so now: concert of action as a cause of action is incompatible with MCL 600.2956."); Mich. Comp. Laws § 600.2956). Prior to that ruling, concert of action required showing an underlying tort. *See Urbain v. Beetling*, 835 N.W.2d 455, 464 (Mich. Ct. App. 2013) ("For both civil conspiracy and concert of action, the plaintiff must establish some underlying tortious conduct"). So Plaintiffs' state law concert of action claim must also be dismissed against all remaining defendants.

\* \* \*

In summary, all of Plaintiffs' claims against David Kipfmiller and the Farbman Group must be dismissed for failure to state a claim.

### III. The Hilton's Motion for Summary Judgment

That leaves the Hilton as the sole remaining defendant. But before addressing the merits of its motion, the Court must address the parties' dispute over whether the Hilton is the proper party.

All parties agree that the Plaintiffs' dispute originates with an entity that did business as the Hilton Garden Inn. *See Bridgewater I*, 2020 WL 813388, at *2. This action is Plaintiffs' first attempt to sue the Hilton; Plaintiffs only previously sought to add the local Hilton Garden Inn.  in their prior lawsuit. *Bridgewater I,* Case No. 16-14112, ECF No. 52. Here Plaintiffs name the "Hilton Hotels Corporation" as a defendant. (ECF No. 1.) They filed suit on July 10, 2020 and served the "Hilton Hotels Corporation" through a registered agent. (ECF No. 9, PageID.291.) On November 18, 2021, counsel entered an appearance "on behalf of Hilton Hotels Corporation." (ECF No. 23, PageID.953.)

Then on December 7, 2020, counsel filed a motion for summary judgment on behalf of Hilton Worldwide Holding, Inc. ("HWHI") and argued that the Court must dismiss all claims against it because Plaintiffs failed to name the proper party. (ECF No. 28, PageID.1183.) The motion states that "[t]he named entity didn't exist on the day of Bridgewater's arrest and Hilton never owned the subject property." (*Id.*) Counsel provide an affidavit from the Vice President of HWHI stating that Hilton Worldwide Holdings Inc. was incorporated in 2010 and is the successor in interest to Hilton Hotels Corporation. (ECF No. 28-2, PageID.1197.) The affidavit states that the hotel located at 351 Gratiot Avenue, Detroit, Michigan "is independently owned and

13

operated by Gratiot Hotel Owner, LLC pursuant to franchise licensing agreement" and "HWHI is not a party to any franchise licensing agreement for any hotels or resorts located in the state Michigan." (*Id.*) But no discovery has been taken and, at this stage of the case, Plaintiffs have had no opportunity to adequately address this issue.

But then—completely departing from its position that it has no business in this lawsuit—HWHI engages in the merits of the case and attempts to argue that summary judgment is proper because Plaintiffs have not produced evidence to support their claims. (*See* ECF No. 28, PageID.1183–1189.) Even more strange, although HWHI titles their motion as one for summary judgment and sprinkles that term throughout the brief, the substance of their argument is the same argument raised by Kipfmiller and the Farbman Group. HWHI argues that Plaintiffs cannot maintain claims for malicious prosecution because the Hilton is not a state actor (*id.* at PageID.1183); that the malicious prosecution claim is precluded by the Court's prior finding of probable cause for the arrest (*id.* at PageID.1186–1888); and that Plaintiffs have failed to identify an underlying tort in order to maintain claims for conspiracy or concert of action (*id.* at PageID.1189). (Also, the record indicates that no discovery has yet taken place. (*See, e.g.*, ECF No. 33, PageID.1371.) So the motion filed by HWHI, construed according to its substance, is a motion to dismiss for failure to state a claim.[6]

---

[6] A district court may construe a motion for summary judgment as a motion to dismiss according to its substance. *See, e.g.*, *Townsend v. Emrick*, 55 F. App'x 355, 356 (6th Cir. 2003) (affirming district court properly dismissed complaint under Rule

14

Whether or not HWHI is the proper defendant, the Court will dismiss all of Plaintiffs' remaining claims against the Hilton Hotel or its various incarnations for all of the reasons explained above regarding Kipfmiller and the Farbman Group.

Plaintiffs offer to amend their complaint to name the proper party, (ECF No. 33, PageID.1374), but an amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2). Other than substituting a defendant, Plaintiffs have not identified any additional facts or proposed revisions that would cure the deficiencies in their legal claims. *See Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 273 (6th Cir. 2018) ("Where parties have fully argued the merits of a 12(b)(6) motion to dismiss and the district court has . . . issued an opinion resolving the motion, it is a stretch to say justice requires granting leave to cure the complaint's deficiencies as identified in the adversarial pleadings and the district court's order[.]").

In summary, construing Plaintiffs' request to amend their complaint as a motion, that motion is denied for futility. And whether or not HWHI is a correctly named defendant, the Court will dismiss all claims against the Hilton Hotel for failure to state a claim for the same reasons that it dismisses the claims against Kipfmiller and the Farbman Group.

---

12(b)(6) where complaint failed to state a claim and the court construed summary judgment motion as a motion to dismiss); *see also Gebrenegusse v. Heyns*, No. 17-2055, 2018 WL 4278568, at *1 (6th Cir. Apr. 20, 2018) (affirming district court's judgment that construed motion for summary judgment as a motion to dismiss, without discussion of the construction of the motion).

## IV. Conclusion

Accordingly, the motion to dismiss by the Farbman Group (ECF No. 12), the motion to dismiss by David Kipfmiller (ECF No. 22), and the motion for summary judgment by Hilton Worldwide Holdings, Inc., construed as a motion to dismiss (ECF No. 28), are all GRANTED.

All remaining claims and defendants in this case are DISMISSED.

SO ORDERED.

Dated: July 19, 2021　　　　　　　　　　　　s/Laurie J. Michelson
　　　Detroit, Michigan　　　　　　　　　　　LAURIE J. MICHELSON
　　　　　　　　　　　　　　　　　　　　　United States District Judge